Page 2

Original

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED

| **United States District Court** | District | Eastern U.S. DISTRICT COURT E.D.N.Y. IN CLERK'S OFFICE |
|---|---|---|

| Name (under which you were convicted): Alvena Jennette | Docket or Case No. JUL 16 2004 6517/87 |
|---|---|

| Place of Confinement: Woodbourne Correctional Facility | Prisoner No. BROOKLYN OFFICE 88A8232 |
|---|---|

| Petitioner (include the name under which you were convicted) Alvena Jennette | v. | **CV 04 3075** Raymond J. Cunningham Superintendent |
|---|---|---|

| The Attorney General of the State of | New York | AMON, J. |
|---|---|---|

GOLD. M.

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging: Supreme
Court, Kings County; 360 Adams St., Brooklyn, NY 11201

   (b) Criminal docket or case number (if you know): 6517/87

2. (a) Date of the judgment of conviction (if you know): July 28, 1988

   (b) Date of sentencing: August 18, 1988

3. Length of sentence: 18 years to life imprisonment

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☐ No ☑

5. Identify all crimes of which you were convicted and sentenced in this case: Felony Murder
New York Penal Law § 125.25 [3]

6. (a) What was your plea? (Check one)

   (1) Not guilty ☑         (3) Nolo contendere (no contest) ☐

   (2) Guilty ☐         (4) Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge,
   what did you plead guilty to and what did you plead not guilty to?

RECEIVED
JUL 16 2004
PRO SE OFFICE

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☑          Judge only ☐

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes ☐  No ☑

8. Did you appeal from the judgment of conviction?

Yes ☑  No ☐

9. If you did appeal, answer the following:

(a) Name of court: __Supreme Court of the State of New York Appellate Division, Second Department__

(b) Docket or case number (if you know): _____

(c) Result: __Judgment Affirmed__

(d) Date of result (if you know): __December 10, 1990__

(e) Citation to the case (if you know): __168 A.D.2d 513__

(f) Grounds raised: __See Attached Page 1__

(g) Did you seek further review by a higher state court?   Yes ☑  No ☐

If yes, answer the following:

(1) Name of court: __New York State Court of Appeals__

(2) Docket or case number (if you know): _____

(3) Result: __Denial of Permission to Appeal to Court of Appeals__

(4) Date of result (if you know): __July 31, 1991__

(5) Citation to the case (if you know): __78 N.Y.2d 955__

(6) Grounds raised: __See Attached Page 1__

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐  No ☑

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

    Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

  (a) (1) Name of court: __Supreme Court, County of Kings__

     (2) Docket or case number (if you know): __6517/87__

     (3) Date of filing (if you know): __March 3, 1992__

     (4) Nature of the proceeding: __Motion to Vacate Judgment (CPL § 440.10)__

     (5) Grounds raised: __See Attached Page 2__

_____

_____

_____

_____

_____

_____

_____

_____

     (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        Yes ☐   No ☒

     (7) Result: __Motion Denied__

     (8) Date of result (if you know): __June 5, 1992__

  (b) If you filed any second petition, application, or motion, give the same information:

     (1) Name of court: __Supreme Court, County of Kings__

     (2) Docket or case number (if you know): __6517/87__

     (3) Date of filing (if you know): __July 7, 1992__

     (4) Nature of the proceeding: __Motion for reargument (CPL § 440.10)__

     (5) Grounds raised: __See Attached Page 2__

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

      Yes ☐  No ☑

(7) Result: __Denied__

(8) Date of result (if you know): __August 5, 1992__

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: __Supreme Court, Appellate Division, 2nd Dept.__

(2) Docket or case number (if you know): __92-08382__

(3) Date of filing (if you know): __November 24, 1992__

(4) Nature of the proceeding: __Motion for Reargument of Point II__

(5) Grounds raised: __THE DEFENDANT WAS DEPRIVED OF HIS STATE AND__

    __FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE__

    __COURT'S ERRONEOUS ALLEN CHARGE ON REASONABLE DOUBT__

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

      Yes ☐  No ☑

(7) Result: __Motion Denied__

(8) Date of result (if you know): __February 17, 1993__

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    Yes ☑  No ☐      (4) Fourth petition    Yes

(2) Second petition:  Yes ☑  No ☐        See Attached Page 3

(3) Third petition:   Yes ☑  No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: _____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND DEPRIVED OF A FAIR TRIAL BY THE PEOPLE'S FAILURE TO TURN OVER EXCULPATORY MATERIAL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): See Attached Pages 4-7

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

(c) **Direct Appeal of Ground One:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐   No ☑

   (2) If you did not raise this issue in your direct appeal, explain why: Petitioner was unaware of the material when his direct appeal was heard.

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   Yes ☑   No ☐

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: Motion to Vacate Judgment (CPL § 440.10)

   Name and location of the court where the motion or petition was filed: Supreme Court, Kings County, 360 Adams Street, Brooklyn, New York 11201

   Docket or case number (if you know): 6517/87

   Date of the court's decision: June 5, 1992

Result (attach a copy of the court's opinion or order, if available): <u>Motion denied</u>

(3) Did you receive a hearing on your motion or petition?

    Yes ☐  No ☑

(4) Did you appeal from the denial of your motion or petition?

    Yes ☑  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☑  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: <u>Appellate Division, Second</u>
<u>Department, 45 Monroe Place, Brooklyn, New York 11201</u>

Docket or case number (if you know): <u>92-08833</u>

Date of the court's decision: <u>January 27, 1993</u>

Result (attach a copy of the court's opinion or order, if available): <u>Application denied</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that
you have used to exhaust your state remedies on Ground One: _____

        THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT
        TO DUE PROCESS OF LAW AND DEPRIVED OF A FAIR TRIAL
**GROUND TWO:** ~~BY THE PEOPLE'S FAILURE TO TURN OVER PRIOR WRITTEN~~
OR RECORDED STATEMENTS MADE BY THE PEOPLE'S WITNESS

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): <u>See</u>
<u>Attached Pages 8-10</u>

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

#### (c)  Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why: Petitioner was unaware
of the material when his direct appeal was heard.

_____

#### (d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☑   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion to Vacate Judgment (CPL § 440.10)

Name and location of the court where the motion or petition was filed: Supreme Court, Kings
County, 360 Adams Street, Brooklyn, New York 11201

Docket or case number (if you know): 6517/87

Date of the court's decision: June 5, 1992

Result (attach a copy of the court's opinion or order, if available): Motion denied

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☑

(4) Did you appeal from the denial of your motion or petition?

Yes ☑   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☑   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Appellate Division, Second
Department, 45 Monroe Place, Brooklyn, New York 11201

Docket or case number (if you know): 92-08833

Date of the court's decision: January 27, 1993

Result (attach a copy of the court's opinion or order, if available): Application denied

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

**GROUND THREE:** THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): See Attached Pages 10-21

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐   No ☑

   (2) If you did not raise this issue in your direct appeal, explain why: Counsel's ineffective assistance was not part of the lower court record.

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   Yes ☑   No ☐

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: Motion to Vacate Judgment (CPL § 440.10)

   Name and location of the court where the motion or petition was filed: Supreme Court, Kings County, 360 Adams Street, Brooklyn, New York 11201

Docket or case number (if you know): 6517/87

Date of the court's decision: June 5, 1992

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☐   No ☑

(4) Did you appeal from the denial of your motion or petition?

    Yes ☑   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☑   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Appellate Division, Second
Department, 45 Monroe Place, Brooklyn, New York 11201

Docket or case number (if you know): 92-08833

Date of the court's decision: January 27, 1993

Result (attach a copy of the court's opinion or order, if available): Application denied

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that
you have used to exhaust your state remedies on Ground Three: _____

_____

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT
TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY
**GROUND FOUR:** HER FAILURE TO RAISE A CLAIM OF INEFFECTIVE ASSISTANCE
OF TRIAL COUNSEL FOR HIS FAILURE TO OBJECT TO HEARSAY TESTIMONY

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): See
Attached pages 22-26

GROUND FIVE: See Attached Pages 27-31

GROUND SIX: See Attached Pages 32-35

GROUND SEVEN: See Attached Pages 36-40

GROUND EIGHT: See Attached Pages 41-44

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why: Appellate counsel failed to raise the issue on direct appeal.

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        Yes ☑   No ☐

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: Appellate Division, Second Department, 45 Monroe Place, Brooklyn, New York 11201

Docket or case number (if you know): 1992-08382

Date of the court's decision: October 14, 2003

Result (attach a copy of the court's opinion or order, if available): Application denied

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ☐   No ☑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☑   No ☐

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☑   No ☐

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: New York State Court of Appeal 20 Eagle Street, Albany, New York 12207-1095

Docket or case number (if you know): 6517/87

Date of the court's decision: January 8, 2004

Result (attach a copy of the court's opinion or order, if available): Denial of permission to appeal to the Court of Appeals

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

   (a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?     Yes ☑  No ☐

   If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

   (b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ☐  No ☑

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinions or orders, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?          Yes ☐   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

(b) At arraignment and plea: ___Jay D. Cohen, 26 Court Street, Brooklyn___ New York 11242 _____

(c) At trial: __Jay D. Cohen, 26 Court Street, Brooklyn, New York__ 11242 _____

(d) At sentencing: _____Jay D. Cohen, 26 Court Street, Brooklyn New York 11242 _____

(e) On appeal: ___Cristina D'Amato, P.O. Box 964, White Plains, New York 10602 _____

(f) In any post-conviction proceeding: ___None _____

(g) On appeal from any ruling against you in a post-conviction proceeding: ___None _____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐   No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   Yes ☐   No ☐

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

See Attached Page 45

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: That the petition be granted and the petitioner's conviction be reversed and the indictment dismissed, or in the alternative, a new trial ordered. or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on  July 12, 2004
_____ (month, date, year).

Executed (signed) on  July 11, 2004 _____ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____
_____

## POINT I

THE PEOPLE FAILED TO PROVE BEYOND A RESONABLE DOUBT EVERY ELEMENT OF THE CRIME OF FELONY MURDER AND APPELLANT'S GUILT THEREOF

## POINT II

THE JURY'S VERDICT WAS NOT THE PRODUCT OF A FAIR AND UNFETTERED DELIBERATION, BUT RATHER THE RESULT OF JUDICIAL COERCION

## POINT III

THE TRIAL COURT ERRONEOUSLY CHARGED THE JURY THAT THEY MUST TRY TO RECONCILE DISCREPANCIES IN TESTIMONY

## POINT IV

APPELLANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE INTRODUCTION BY THE PEOPLE OF UNCHARGED CRIME EVIDENCE

## POINT V

APPELLANT WAS DENIED MEANINGFUL REPRESENTATION AND DUE PROCESS OF LAW BY THE TRIAL COURT IMPROPERLY DISCHARGING A SWORN JUROR ON CONSENT OF COUNSEL AND OUTSIDE THE PRESENCE OF APPELLANT WITHOUT HIS CONSENT

1

## POINT I

THE DEFENDANT WAS DEPRIVED OF A FAIR TRIAL BY THE PROSECUTION'S FAILURE TO PROVIDE PRIOR WRITTEN OR RECORDED STATEMENTS MADE BY THE PROSECUTION'S WITNESS

## POINT II

THE DEFENDANT WAS DEPRIVED OF A FAIR TRIAL BY THE PROSECUTION'S FAILURE TO PROVIDE THE DEFENDANT WITH EXCULPATORY MATERIAL IN THEIR CONTROL

## POINT III

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO INVESTIGATE OR INTERVIEW FIVE POTENTIAL WITNESSES AND PREPARE A DEFENSE TO THE CHARGE

## POINT IV

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO CONSULT WITH HIS CLIENT, INVESTIGATE THE FACTS, OR OTHER-WISE PREPARE THE CASE FOR TRIAL

## GROUND V

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT TO TESTIFY BY TRIAL COUNSEL'S ILL ADVICE AND REPEATED INSISTENCE THAT THE DEFENDANT NOT TESTIFY IN HIS OWN BEHALF

(C-1) If you filed any fourth petition, application, or motion, give the same information:

   (1) Name of court: Supreme Court Appellate Division, Second Judicial
       Department

   (2) Docket or case number: 92-08382

   (3) Date of filing: June 5, 2003

   (4) Nature of proceeding: Writ of Error Coram Nobis

   (5) Grounds Raised: **THE APPELLANT WAS DENIED HIS CONSTITUTIONAL
       RIGHT TO THE EFFECTIVE ASSISTANCE OF HIS
       APPELLATE COUNSEL BY HERFAILURE TO RAISE A
       CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL
       COUNSEL FOR HIS FAILURE TO OBJECT TO THE
       ADMISSION OF HIGHLY PREJUDICIAL HEARSAY
       TESTIMONY THAT WAS INTRODUCED DURING THE
       TRIAL.**

   (6) Did you receive a hearing where evidence was given on your Petition,
       application or motion?

       **No**

   (7) Result: Motion Denied

   (8) Date of result: October 14, 2003

3

**GROUND I**

## THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND DEPRIVED OF A FAIR TRIAL BY THE PEOPLE'S FAILURE TO TURN OVER EXCULPATORY EVIDENCE IN THEIR POSSESSION DURING THE TRIAL.

On September 10, 1985, Detective Peaslee prepared a police report based on a statement that was given to him by Rebecca Isaac at the 77th precinct (See Exhibit A, Police Report of Rebecca Isaac Dated 9-10-85). After the statement was taken from Isaac, Assistant District Attorney Fox arrived at the 77th precinct at which time an audio taped statement was made of Isaac concerning the investigation into the death of Ronnie Durant (See Exhibit B, Rebecca Isaac's Audio Taped Statement dated 9-10-85). However, during the trial, the People failed to provide the defense counsel with this crucial piece of evidence, although defense counsel made a specific request for it in his pretrial omnibus motion and was told that no such material was known to exist in the People's response to the omnibus motion (See Exhibit D, Petitioner's Pretrial Omnibus Motion & The District Attorneys Response).

4

What made Isaac's audio taped statement such a crucial piece of trial evidence for the defense of the petitioner is that the People's witness [Randolph Maxwell][1] was permitted to testify on direct-examination that on September 10, 1985, he was in the school yard directly across the street from Isaac's home when he observed Isaac come out of her apartment building onto the steps and tell the petitioner, his codefendant, and a couple of other guys that Durant was inside of her apartment with a lot of money and when he comes outside she wanted them to rob him (T.T. 148-149).[2]

Maxwell's testimony directly implicated Isaac in the crime and placed her on the steps of her home with the petitioner, his codefendant, and other guys prior to Durant being shot and allegedly robbed. Rebecca Isaac was never arrested or charged with acting in concert with the petitioner and his codefendant, nor was she charged as an accomplice or an accessory in the alleged robbery and murder of Durant.

The audio taped statement that was made of Isaac not only contradicted Maxwell's trial testimony, it also totally refutes Maxwell's version of Isaac approaching the petitioner, his codefendant, and other guys and encouraging them to rob Durant once he left her home.

---

[1] Randolph Maxwell is allegedly suppose to be the nephew of the deceased Ronnie Durant.

[2] T.T. in parenthesis refers to the exact pages of the trial transcript.

5

The audio taped statement also reflects that when Isaac and Durant returned from purchasing the drugs for her, he never reentered her apartment and she never left her apartment and went back onto the steps of her home (See Exhibit B, Rebecca Isaac's Audio Taped Statement Dated 9-10-85; See Also, Exhibit A, Police Report of Rebecca Isaac Dated 9-10-85).

The audio taped statement of Isaac further disclosed that Durant never had any money when they went to purchase the drugs for her, and that Isaac refused to share the drugs that she had just purchased with him (See Exhibit B, Rebecca Isaac's Audio Taped Statement Dated 9-10-85; See Also, Exhibit A, Police Report of Rebecca Isaac Dated 9-10-85). This portion of Isaac's audio taped statement clearly could have not only refuted Maxwell's testimony of Durant having a lot of money, but that of the People's other witness [Teresa Gomez] who testified during the trial that she saw the petitioner's codefendant take a roll of money out of Durant's pocket while he was lying on the ground (T.T. 217,299).

Rebecca Isaac's withheld audio taped statement was a crucial piece of evidence to the defense, and because it was withheld, defense counsel had no other evidence to refute Maxwell's version of the incident as described by Maxwell. Maxwell's testimony of Isaac allegedly approaching the petitioner and his codefendant was the sole evidence offered by the People that could support the petitioner's conviction of felony murder.

6

Without Maxwell's testimony relating to Isaac's alleged participation, the People could not prove the petitioner and his codefendant's intent to rob Durant before the actual murder took, place which is a vital element of felony murder.

Teresa Gomez testified to witnessing the petitioner, his codefendant, and Durant all exchanging gunfire. Gomez could not explain how the shooting started, why it started, or who initiated it, and although Gomez testified to seeing money taken out of the pocket of Durant (T.T. 217,299), her testimony could not support the charge of felony murder because the required intent to rob Durant before the actually murder was absent.

The petitioner was further prejudiced by the withholding of Isaac's audio taped statement by the prosecutor referring to Isaac approaching the petitioner and his codefendant to set Durant up to be robbed in his closing remarks to the jury (T.T. 393).

It is also apparent from the record that jury considered Maxwell's testimony to be crucial during their three days of deliberation by their final request which was to have a readback of Maxwell's testimony which was the only evidenced offered that established a motive and intent to rob Durant by the actions of Isaac (Exhibit E, Jurors Note Dated July 28, 1988).

Rebecca Isaac's audio taped statement was clearly exculpatory evidence that should have been turned over to defense counsel prior to the trial, and as a result of the People's failure to provide defense counsel with a copy of Isaac's audio taped statement, the petitioner was denied the right to a fair trial and due process of law.

7

**THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND DEPRIVED OF A FAIR TRIAL BY THE PEOPLE'S FAILURE TO TURN OVER A PRIOR WRITTEN STATEMENT MADE BY THE PEOPLE'S WITNESS WHICH WERE IN THEIR CONTROL DURING THE TRIAL**

On October 3, 1985, Detective Bobby Jones prepared a police report which stated he was present at the Brooklyn District Attorneys office with Randolph Maxwell in an attempt to get an arrest warrant (See Exhibit F, Police Report of Detective Bobby Jones Dated 10-3-85). At the time, Maxwell was given a polygraph examination which he passed. However, the Brooklyn District Attorneys Office would not prosecute the case against the petitioner and his codefendant because of the character of the witness Randolph Maxwell (See Exhibit F, Police Report of Detective Bobby Jones Dated 10-3-85).

Prior to the petitioner's trial, defense counsel made a general request in his pretrial omnibus motion to be provided with any/all prior written or recorded statements that was made by the People's witnesses (See Exhibit D, Petitioner's Pretrial Omnibus Motion & District Attorney's Response).

8

However, the People did not provide defense counsel with any material relating to Maxwell's polygraph notepack prior to the trial. The polygraph notepack contained a partial list of target questions prepared by the polygraph examiner and given to Maxwell to answer (See Exhibit G, Randolph Maxwell's Polygraph Notepack Dated 10-3-85). The petitioner was provided with a copy of the polygraph notepack for the first time when the People responded to a motion to vacate the judgment that was submitted by the petitioner after the trial. The People acknowledged in their response to petitioner's motion to vacate the judgment that the polygraph notepack was not turned over to defense counsel prior to the trial.

The petitioner was never able to show how he was prejudiced by the People's failure to turn over Maxwell's polygraph notepack in his motion to vacate the judgment merely because when the People did decide to turn over the polygraph notepack to the petitioner it was incomplete. Although the polygraph notepack contained a partial listing of the questions that was asked of Maxwell during the polygraph examination, the answers that was given by Maxwell to those questions has never been disclosed to the petitioner (See Exhibit G, Randolph Maxwell's Polygraph Notepack Dated 10-3-85), and given the fact that the Brooklyn District Attorneys Office refused to prosecute the case against the petitioner on the very day that Maxwell passed the polygraph examination because of the character of Maxwell (See Exhibit F, Police Report of Detective Bobby Jones Dated 10-3-85), the questions presented to Maxwell and answered by him was of paramount importance and should have been given to defense counsel prior to the start of trial.

9

Moreover, the questions asked by the polygraph examiner and answered by Maxwell could have very well been contrary to Maxwell's previous statements, police reports, and trial testimony, and for the People to withhold evidence from defense counsel which could have been possibly utilized for impeachment purposes help deprive the petitioner of his right to a fair trial.

## GROUND III

**THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO INVESTIGATE OR INTERVIEW FIVE POTENTIAL DEFENSE WITNESSESS AND PREPARE A DEFENSE TO THE CHARGE**

Prior to the trial, defense counsel was provided with critical police reports of potential defense witnesses that could have substantially aided the petitioner in proving his innocence during the trial. Nonetheless, defense counsel failed to investigate or interview five potential witnesses that was either interviewed by the police in the course of their investigation into the death of Ronnie Durant, or mentioned in the various police reports and audio taped statements.

10

After the trial, Hill was located by the petitioner and provided a sworn affidavit to the petitioner to be submitted with the petitioner's affidavit in support of his motion to vacate the judgment (See Exhibit N, Anthony Hill's Affidavit Dated 9-27-91). Hill's affidavit states that on September 10, 1985, he never attempted to go into Durant's pockets and he was not holding Durant around the neck. Hill further stated in his affidavit that he did not run with the petitioner and his codefendant after Durant was shot, and that he was not present when Durant was shot (See Exhibit N, Anthony Hill's Affidavit Dated 9-27-91).

Despite the fact that defense counsel was aware, or at the very least should have been aware of the statements made by the People's witnesses regarding Hill's alleged involvement through the People's disclosure of their witnesses prior police reports and audio taped statements, he failed to investigate or interview Hill as a potential witness for the petitioner's defense. If defense counsel would have taken the time to investigate or interview Hill as a potential defense witness, he would have been aware of the value of calling Hill to testify during the trial to disprove and refute certain portions of the People's case, as well as expose the glaring inconsistencies and contradictions in the People's witnesses previous police reports, audio taped statements, and trial testimony. Therefore, there was absolutely no reason for defense counsel not to investigate, interview, or call Hill as a defense witness during the trial.

13

## REBECCA ISAAC

In a police report dated September 10, 1985, Rebecca Isaac was interviewed by Detective Peaslee at the 77th precinct, and Isaac stated that on September 10, 1985, she was with Ronnie Durant inside of her apartment getting high. After they got high, Isaac stated that they left her apartment to go purchase some more drugs. Isaac then stated that after they returned from purchasing the drugs they were in her hallway and she told Durant that the drugs that she had just purchased was not enough for both of them to share and left him in the hallway while she went into her apartment to get high by herself (See Exhibit A, Police Report of Rebecca Isaac Dated 9-10-85).

Isaac went on to state that Durant stayed in her hallway banging on her door asking her to let him in, but she told her daughter to tell him that she was in the bathroom. Durant then asked Isaac's daughter to tell Isaac to pass out his works.[3] Isaac then gave her daughter the works to give to Durant, [4]and a short time later she heard the hallway door close while she was in her kitchen (See Exhibit A, Police Report of Rebecca Isaac Dated 9-10-85).

---

[3] "Works" is the street slang that is used by intravenous drug user when they are referring to hypodermic syringes.

[4] In a police report dated 10-8-85, Detective Bobby Jones interviewed Isaac's daughter and she stated that on 9-10-85 she handed a guy a brown paper bag through the door which supports Isaac's initial statement to the police (See Exhibit C, Police Report of Rebecca Isaac's Daughter Dated 10-8-85).

14

During the trial, Randolph Maxwell was permitted to testify on direct-examination that Isaac came out of her building on September 10, 1985, and told the petitioner, his codefendant, and a couple of other guys that Durant was inside of her apartment with a lot of money and that she wanted them to rob him when he came outside (T.T. 148-149). Defense counsel was in possession of Isaac's police report prior to the trial, and had he investigated or interviewed Isaac as a potential defense witness he would have been aware of the value of her testimony. Isaac's police report clearly gave defense counsel a basis for pursuing Isaac as a defense witness given the fact that she was the last person with Durant before he was shot and killed.

Only Isaac's direct testimony during the trial could have actually refuted Maxwell's version of Isaac approaching the petitioner, his codefendant, and other guys, or at the very least, raised a reasonable doubt as to the petitioner's guilt. If Isaac was called to testify,  more than likely she would have denied leaving her apartment once she returned from purchasing the drugs with Durant, as well as deny that she ever told the petitioner and his codefendant to rob Durant. Isaac could have further testified to the fact that she was the last person with Durant before he was shot and killed, and that he did not have any money when they left her house to go purchase the drugs for her which totally refutes both of the People's witnesses trial testimony.

15

Rebecca Isaac's testimony was crucial to the defense of the petitioner because Maxwell's testimony was the only evidence offered by the People to establish every element of felony murder, and there was absolutely no strategic reason for defense counsel not to investigate, interview, or call Isaac as a defense witness during the trial.

## C. COOPER

In a police report dated September 11, 1985, C. Cooper was interviewed over the telephone by the police and he stated that on September 10, 1985, at about one o'clock in the morning he heard two shots and immediately went to his front window. Cooper further stated that when he reached his window he observed a black male [Ronnie Durant] staggering down the street and fall to the ground across the street from his home in front of the travel agency (See Exhibit O, Police Report of C. Cooper Dated 9-11-85).

In the audio taped statement that was made of Teresa Gomez on July 15, 1987, Gomez stated that when Durant fell to the ground the petitioner and his codefendant ran up to him and fired about four more shots at him while he was lying there, and then the petitioner's codefendant took money out of Durant's pocket (See Exhibit M, Teresa Gomez's Audio Taped Statement Dated 7-15-87).

16

In a police report dated July 15, 1987, Gomez again stated that when Durant fell to the ground the petitioner and his codefendant continued shooting at him, and then the petitioner's codefendant took money out of Durant's pocket (See Exhibit K, Police Report of Teresa Gomez Dated 7-15-87). However, during the trial Gomez testified that the petitioner's codefendant took money out of Durant's pocket but no one fired shots at Durant while he was lying on the ground (T.T. 216-217,301).

If defense counsel had taken the time to investigate the police reports, he would have been aware of how crucial Cooper's testimony would have been during the trial. Cooper's testimony was crucial to the petitioner's defense because it would have refuted Gomez's trail testimony regarding key issues. Cooper could have testified during the trial that he did observe Durant before and after he fell to the ground, and because there is nothing mentioned in his police report about any one shooting Durant while he was lying on the ground, or taking money out of his pockets, it is safe to assume that he would have testified as such (See Exhibit O, Police Report of C. Cooper Dated 9-11-85).

Cooper's testimony clearly refutes Gomez's version of what actually happened, as well as point out the glaring inconsistencies in her previous statements and trial testimony. Again, there was simply no legitimate reason for defense counsel not to investigate, interview, or call Cooper as a defense witness during the trial.

17

**SHIRLEY WILLIAMS**

In a police report dated September 10, 1985, Shirley Williams was interviewed by Detective Bobby Jones and she stated that during the early morning hours of September 10, 1985, she was on the steps of her home drinking and listening to music.[5]  She further stated that at about a little after midnight she went into her building and when she got ready to open the door to her apartment she heard two shots. Williams went on to state that after she heard the two shots she went back downstairs but did not see anyone so she went back in the house and went to bed. Williams finally stated that some young guys was down the street by some cars while she was outside drinking, but she did not know any of them (See Exhibit P, Police Report of Shirley Williams Dated 9-10-85).

In the audio taped statement that was made of Randolph Maxwell on September 12, 1985, Maxwell stated that Williams was in her window and he heard her say "Universal, why you shoot that man" [6]Maxwell further stated that Williams lived on the second floor at 788 Park Place (See Exhibit I, Randolph Maxwell's Audio Taped Statement Dated 9-12-85).

---

[5] Shirley Williams lived in an apartment on the third floor at 788 Park Place.

[6] "Uni or Universal" was the nickname of the petitioner's codefendant Darryl Austin.

18

In a police report dated October 8, 1985, Williams was re-interviewed by Detective Bobby Jones and once again she stated that she was about to enter her apartment when she heard a shot. She then stated that she ran downstairs but did not see anyone, and she did not know who the guys were down the street by some cars. Williams further stated that she did not yell out of her window saying "Uni, what you do that for" (See Exhibit Q, Police Report of Shirley Williams Dated 10-8-85).

Williams was then shown photo spreads of the petitioner, his codefendant, and Anthony Hill, and she stated that they were not the guys down the street by the cars and that she did not know any of them (See Exhibit Q, Police Report of Shirley Williams Dated 10-8-85).

During the trial, Maxwell testified that he did not see Williams but he thought she was in her window (T.T. 175). Williams was called as a witness for the defense by counsel for the petitioner's codefendant (T.T. 113-114). However, before Williams could testify, a hearing was held and the Court ruled that the prosecutor would be permitted to ask Williams did she shout out of her window saying "Uni, why did you shoot that man" (T.T. 344-346).

The petitioner's codefendant counsel used the court ruling as a basis for not calling Williams to testify during the trial (T.T. 346), although she clearly denied making the statement in her previous police report (See Exhibit Q, Police Report of Shirley Williams Dated 10-8-85). Williams was ready and willing to testify for the petitioner and his codefendant and deny ever making the statement (T.T. 113-114).

19

Jordan was then showed a photo array of the petitioner, his codefendant, and Anthony Hill and he stated that he has seen the petitioner and his codefendant, but could not say if they were the ones on the cars down the street (See Exhibit R, Police Report of David Jordan Dated 10-9-85).

If Jordan was called to testify as a defense witness, he could have not only corroborated Williams statements to the police, but also testified that it would have been impossible for Williams to have been in her window when Durant was shot because they were about to enter their apartment when they heard the two gun shots.

Nonetheless, defense counsel again failed to investigate or interview Jordan to ascertain the potential value of his testimony for the defense of the petitioner. In addition, the court appointed a private investigator for the petitioner and his codefendant prior to the trial to aid defense counsel in investigating, locating, and interviewing potential defense witnesses. However, defense counsel made no attempts to have the investigator locate or interview any of these potential defense witnesses although they were mentioned in the various police reports or audio taped statements.

In fact, defense counsel not only failed to investigate and interview these potential defense witnesses, he also failed to introduce any of the police reports or audio taped statements into evidence to expose the glaring inconsistencies in the People's witnesses trial testimony. The petitioner never seen any of these police reports During the trial. He was provided with them for the first time after he was sentenced (See Exhibit U, Attorney Letter Dated 11-22-88).

21

## GROUND IV

**THE PETITIONER WAS DENIED HIS CONSTITUTIONALRIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO CONSULT WITH THE PETITIONER PRIOR TO THE TRIAL AND MAKE USE OF CRUCIAL EVIDENCE DISCLOSED TO THE DEFENSE PRIOR TO THE TRIAL, AND BY TRIAL COUNSEL'S ILL ADVICE AND INSISTENCE THAT THE PETITIONER NOT TESTIFY IN HIS OWN BEHALF**

## DEFENSE COUNSEL'S FAILURE TO CONSULT WITH THE PETITONER

During the eleven months that the petitioner was held in custody prior to the petitioner's trial, defense counsel consulted with the petitioner once for a period of roughly twenty minutes in the courthouse holding cells. The brief consultation between the petitioner and defense counsel occurred shortly after the petitioner's arraignment. No other meetings or consultations regarding the case occurred.

On numerous occasions during the petitioner's brief court appearances, the petitioner repeatedly requested defense counsel to come see him to discuss the case and hear what the petitioner had learned about the case. Defense counsel refused the petitioner's request to schedule a meeting with him to discuss the case, the witnesses, the evidence, or the serious nature of the charges that the petitioner faced, and as a result the petitioner had no way of knowing who would be called as a witness in his defense, what evidence would be used to prove his innocence, or what defense would be used.

22

In a police report dated September 10, 1985, Audrey Rice stated that she was on her way home on September 10, 1985, when two police officers stopped her. She further stated that they had peppers nephew in the police car [8] (See Exhibit S, Police Report of Audrey Rice Dated 9-10-85). Although this police report confirms the fact that Randolph Maxwell was in police custody on the night that Ronnie Durant was shot and killed, he did not implicate the petitioner and his codefendant until he was under arrest two days later for unrelated [9]charges, and defense counsel failed to bring this crucial piece of evidence to the attention of the jury.

In a police report dated 9-10-85 (See Exhibit A, Police Report of Rebecca Isaac dated 9-10-85), it was noted that Assistant District Attorney Fox responded to the 77th Precinct and a audio taped statement was made of Isaac (See Exhibit B, Rebecca Isaac's Audio taped statement dated 9-10-85). In a police report dated 10-3-85 (See Exhibit F, Police Report of Detective Bobby Jones Dated 10-3-85), Detective Jones mentioned that Maxwell was given a polygraph examination (See Exhibit G, Randolph Maxwell's polygraph notepack Dated 10-3-85). Trial counsel was in possession of these police reports prior to the trial, but he failed to request this additional *Brady* and *Rosario* material from the prosecution.

---

[8] "Pepper was the street name of the deceased Ronnie Durant.

[9] Randolph Maxwell was picked up by Detective Bobby Jones at the 79th precinct and taken to the 77th precinct to be questioned about the shooting of Durant. However, he escaped from police custody when he was left alone handcuffed to a chair (T.T. 171-172).

25

## DEFENSE COUNSEL'S ILL ADVICE

During the first and only meeting that took place between the petitioner and defense counsel, the petitioner expressed his desire to testify in his own behalf to deny his guilt to the crime charged. On the day that the petitioner's trial started, the petitioner again expressed his desire to testify, and throughout the trial he fully expected to testify. However, after the last witness testified, defense counsel approached the petitioner for the first time and told him that he was not going to put him the witness stand because it would not be in the petitioner's best interest.

Defense counsel further stated that it would do more harm than good if the petitioner was to take the stand and testify, and that it was really unnecessary because the People had a weak case and their witnesses was unworthy of belief.

The discussion between the petitioner and defense counsel lasted about five to ten minutes while they were sitting at the defense table in the courtroom. The petitioner reluctantly did not take the witness stand in his own behalf because of the ill advice given to him by counsel. Defense counsel then stated for the record that he did advise the petitioner that it would not be in his best interest to testify in his own behalf (T.T. 343). Defense counsel was well aware that the petitioner had no previous criminal convictions that could be used during cross-examination, yet defense counsel still advised the petitioner not to testify in his own behalf.

**GROUND FIVE:  THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW BY THE TRIAL COURT IMPROPERLY DISCHARGING A SWORN JUROR ON CONSENT OF COUNSEL AND OUTSIDE THE PRESENCE OF THE PETITIONER AND WITHOUT THE PETITIONER'S CONSENT**

    (a) Supporting facts: See Attached Pages 29-31

    (b) If you did not exhaust your state remedies on Ground Five, explain why:

    (c) **Direct Appeal of Ground Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes

(2) If you did not raise this issue in your direct   appeal, explain why:

    (d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No

(2) If your answer to Question (d)(1) is Yes, state:

    Type of motion or petition:

27

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?

(4) Did you appeal from the denial of your motion or petition?

(5) If your answer to Question (d)(4) is Yes, did you raise this issue on appeal?

(6) If your answer to Question (d)(4) is Yes, state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is No, explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five:

## GROUND V

**THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW BY THE TRIAL COURT IMPROPERLY DISCHARGING A SWORN JUROR ON THE CONSENT OF COUNSEL AND OUTSIDE THE PRESENCE OF THE PETITIONER AND WITHOUT HIS CONSENT**

On July 28, 1988, prior to the start of the petitioner's trial, the court was informed by the clerk that juror number one [Miss Orlando] wanted to address the court. Shortly thereafter, Orlando addressed the court in the presence of the prosecutor and both defense counsels and stated that she was very sorry if she caused any inconvenience, but she was a little concerned about the fact that the defendants knew that she worked for the United States Attorneys Office in Brooklyn (T.T. 41-42).

Orlando went on to state that she knew the defendants were not guilty, but there was a chance that they might get convicted and they knew that she worked two blocks down. The court then informed Orlando that the defendants also knew that there was a person on the jury that worked for American Express. Orlando responded to the court by stating that the defendants did not know where that person worked at, but they knew she worked two blocks down (T.T. 41-42).

29

The court then allowed the prosecutor to address Orlando's concerns, at which time he tried to assure her that he has never seen a situation where a juror was bothered, annoyed, or had any unpleasant experience after the trial in the state court. Orlando then stated that she has seen it, and just because he has not seen it did not make her feel better. When the prosecutor finished addressing Orlando, the petitioner's codefendant counsel asked the court to be heard outside the presence of Orlando (T.T. 42-43).

After Orlando was excused from the courtroom, the petitioner's codefendant counsel challenged the juror for cause based on the juror's response to the prosecutor remarks. The prosecutor then addressed the court and stated that he would not object to a substitution if that's what was being requested by defense counsel. The court then addressed the prosecutor and both of the defense counsels and stated that maybe it was best to discharge the juror if she was reluctant (T.T. 43).

The court then discharged Orlando as a juror on the consent of the prosecutor and both defense counsels and then stated that it was agreed that the defendants presence during the questioning of the juror should be waived, and was in fact waived. The court went on to state that it felt that it was not necessary for the defendants to be present during the questioning of the juror because the juror expressed a fear of the defendants to the court prior to the conference, so the court felt that the defendants should not be present (T.T. 44).

30

The prosecutor then asked the court if the defendants waiver by the court to be present during the questioning of the juror was consented to by both defense counsels, and the both defense counsels stated that it was. The petitioner and his codefendant did not find out about the discharge of the juror until they were returned to the courtroom to start the trial (T.T. 44).

The juror never expressed any fears during her limited questioning, and the court never once asked the juror if she could still be impartial, or if her concerns would affect her judgment in reaching a verdict. In fact, the court never asked the juror any questions pertaining to her concerns although he had reason to when the juror stated that she knew the defendants was not guilty but there was a chance they might get convicted (T.T. 41-44).

The court never inquired about how the juror knew the defendants was not guilty, or why there was a chance they might get convicted, nor find out if there was a discussion taking place among the other jurors, as well as find out if the rest of the jurors had similar views of the defendants (T.T. 41-44). In fact, there is nothing in the record that would justify the discharge of a sworn juror outside of the presence of the petitioner without his consent. The court never made a probing inquiry of the juror's concern to sufficiently warrant a discharge without first being sure that she could no longer be impartial, and that her concerns would affect her judgment in rendering a decision (T.T. 41-44).

31

**GROUND SIX:** THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY HER FAILURE TO RAISE A CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND HIS FAILURE TO OBJECT TO THE ADMISSION OF HIGHLY PREJUDICIAL HEARSAY TESTIMONY

(a) Supporting facts: See Attached Pages 34-35

(b) If you did not exhaust your state remedies on Ground Six, explain why:

(c) **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

No

(2) If you did not raise this issue in your direct appeal, explain why: Appellate counsel failed to raise the issue on direct appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post- conviction motion or petition for habeas corpus in a state trial court?

Yes

(2) If your answer to Question (d)(1) is Yes, state:

Type of motion: Writ of Error Coram Nobis

32

Name and location of the court where the motion or petition was filed: Supreme Court Appellate Division, Second Judicial Department, 45 Monroe Place, Brooklyn, New York, 11201

Docket or Case Number (if you know): 92-08382

Result (attach a copy of the court's opinion or order, if available): Application Denied

(3) Did you receive a hearing on your motion or petition?

No

(4) Did you appeal from the denial of your motion or petition?

Yes

(5) If your answer to Question (d)(4) is Yes, did you raise this issue on appeal?

Yes

(6) If your answer to Question (d)(4) is Yes, state:

Name and location of the court where the appeal was filed: New York State Court of Appeals, Court of Appeals Hall, 20 Eagle Street, Albany, New York 12207

Docket or case number (if you know): 6517/87

Date of the court's decision: January 8, 2004

Result (attach a copy of the court's opinion or order if available): Denial of Certificate for Leave to Appeal

(7) If your answer to Question (d)(4) or Question (d)(5) Is No, explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used   to exhaust your state remedies on Ground six:

## GROUND VI

## THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY HER FAILURE TO RAISE A CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND HIS FAILURE TO OBJECT TO THE ADMISSION OF HIGHLY PREJUDICIAL HEARSAY TESTIMONY

During the petitioner's trial, the prosecutor elicited damaging and irreversible hearsay testimony from Randolph Maxwell without regard to the petitioner's right to confrontation. Maxwell testified on direct-examination that he was in the school yard when he observed Rebecca Isaac come out of her apartment building across the street from the park and tell the petitioner, his codefendant, and a couple of other guys that Ronnie Durant was inside of her apartment with a lot of money and that she wanted them to rob him when he comes outside (T.T. 148-149).

Isaac was never arrested or charged with acting in concert with the defendants, nor was she charged as an accessory in the alleged robbery and murder of Durant. During the trial, Isaac was never called to testify by the prosecution or the defense, and the trial court never conducted a hearing for the purpose of the People establishing a basis for the introduction of such testimony, or make a ruling with respect to the admissibility of such evidence.

34

Nevertheless, trial counsel never objected to this admission of "highly prejudicial" hearsay testimony during the trial, and the People has yet to offer any credible explanation as to how the withholding of Isaac's audio taped statement during the trial did not prejudice the petitioner in light of Maxwell's trial testimony implicating Isaac. The prosecutor knew that Maxwell's highly prejudicial hearsay testimony was false during the trial because he was in possession of Isaac's audio taped statement throughout the trial and well aware of its contents.

Although appellate counsel, nor the petitioner was aware of Isaac's withheld audio taped statement while the petitioner's direct appeal was pending, appellate counsel was in possession of the petitioner's trial transcripts for the purpose of perfecting the petitioner's appeal. The trial transcripts clearly reflects the erroneous and highly prejudicial admission of Maxwell's hearsay testimony, as well as the absence of any objection from defense counsel.

If the petitioner's appellate counsel would have thoroughly reviewed the lower court record, she would have been aware of the fact that Maxwell's testimony was the only evidence that was offered by the People that established and supported the felony murder conviction. Thus, there was simply no justification for appellate counsel not to raise a claim of ineffective assistance of trial counsel on the petitioner's direct appeal for trial counsel's failure to object to Maxwell's hearsay testimony.

**GROUND SEVEN: THE PEOPLE FAILED ADDUCE LEGALLY SUFFICIENT EVIDENCE TO ESTABLISH BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CRIME OF FELONY MURDER**

(a) Supporting facts: See Attached Pages 38-40

(b) If you did not exhaust your state remedies on Ground Seven, explain why?

(c) **Direct Appeal of Ground Seven:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No

(2) If your answer to Question (d)(1) is Yes, State:

Type of motion:

36

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?

(4) Did you appeal from the denial of your motion or petition?

(5) If your answer to Question (d)(4) is Yes, did you raise this issue on appeal?

(6) If your answer to Question (d)(4) is Yes, state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of court's decision:

Result  (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is No, explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc,) that you have used to exhaust your state remedies on Ground Seven:

37

## GROUND VII

## THE PEOPLE FAILED TO ADDUCE LEGALLY SUFFICIENT EVIDENCE TO ESTABLISH BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CRIME OF FELONY MURDER

During the trial, the People's case consisted primarily of the testimony of Teresa Gomez and Randolph Maxwell. Teresa Gomez,[10] the People's principal witness, testified that she saw the petitioner, his codefendant, and Ronnie Durant all exchanging gunfire, and that the petitioner, his codefendant and Durant all had weapons and were firing shots (T.T. 214-217). Gomez then stated that when Durant fell to the ground the petitioner's codefendant approached Durant and took money out of his pockets (T.T. 217-219).

Gomez's testimony, if credited, places the petitioner at the scene of the crime and places a weapon in his hand. However, it does not establish felony murder. Gomez could not tell the jury how the shooting started, why it started, or who initiated it (T.T. 212-219). There is no suggestion from Gomez's testimony that the incident arose from a robbery or attempted robbery, and if the petitioner's codefendant removed money from Durant's pockets after he was allegedly shot, then the intent to rob Durant was an afterthought.

---

[10] Tesresa Gomez can be designated as the principal witness for the People because although the police had Maxwell's statement as early as 9-12-85, two days after the incident, it was not until Gomez spoke to the police in July of 1987 that any arrest were made, and it was Gomez, not Maxwell who appeared before the Grand Jury.

38

During the trial, Maxwell testified that he observed Rebecca Isaac come out of her building and tell the petitioner, his codefendant, and some other guys that Durant was inside of her apartment with a lot of money and that she wanted them to rob him when he came outside (T.T. 148-149). Maxwell then testified that when Durant came out of Isaac's building, the petitioner grabbed him around the neck while Anthony Hill was trying to get into his pockets (T.T. 150).

Maxwell further testified that Durant was fighting back and knocked the petitioner to the ground and then his codefendant shot him, and as Durant began to run, he shot him again (T.T. 150-151). Thus, Maxwell's testimony alone does tend to support the People's position that an attempted robbery preceded the death of Durant (T.T. 148-151),

However, Maxwell's testimony is based on hearsay evidence. Rebecca Isaac never testified during the trial, nor was she ever charged for the alleged role she played in the crime. The trial court never held a hearing to determine whether such highly prejudicial hearsay testimony was admissible, and the petitioner's defense counsel never objected to the introduction of such hearsay testimony during the trial.

Furthermore, not only was Maxwell's testimony hearsay, but it was false and the prosecutor knowingly introduced this testimony. During the trial, the prosecutor failed to provide defense counsel with a copy of Isaac's audio taped statement that was made on the day of the incident (See Exhibit B, Rebecca Isaac's Audio Taped Statement Dated 9-10-85).

39

Isaac's audio taped statement clearly reflects that Isaac never left her apartment when her and Durant returned to her apartment after she purchased some drugs. It also reflects that Durant did not have any money when they went to purchase the drugs and she refused to share the drugs she had just purchased with him (See Exhibit B, Rebecca Isaac's Audio Taped Statement Dated 9-10-85).

The prosecutor was well aware of the contents of Isaac's audio taped statement prior to the trial, as well as the impact that it would have had if it would have been disclosed the defense, Nonetheless, Maxwell was permitted to testify falsely with the prosecutor's knowledge. If Maxwell's false and highly prejudicial hearsay testimony was excluded, then Gomez testimony alone would not have been legally sufficient to establish beyond a reasonable doubt every element of the crime of felony murder.

**GROUND EIGHT: THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TRIAL COURT'S ERRONEOUS AND COERCIVE REASONABLE DOUBT AND ALLEN CHARGES TO THE JURY**

(a) Supporting facts: See Attached Pages 43-44

(b) If you did not exhaust your state remedies on Ground Eight, explain why:

(c) **Direct Appeal of Ground Eight:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No

(2) If your answer to Question (d)(1) is Yes, state:

Type of motion or petition:

41

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?

(4) Did you appeal from the denial of your motion or petition?

(5) If your answer to Question (d)(4) is Yes, did you raise this issue on appeal?

(6) If your answer to Question (d)(4) is Yes, state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order of available):

(7) If your answer to Question (d)(4) or Question (d)(5) is No, explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Eight:

42

It is clear from the record that the verdict was reached reluctantly by a jury that twice reported itself deadlocked. In addition, the general terminology employed by the court seemed to suggest that the petitioner and his codefendant had an affirmative duty to establish reasonable doubt. The court's charge to the jury on reasonable doubt seemed to also suggest that the jurors must give a reason for their doubt's, and that they took an oath and had a duty to come back with a verdict (T.T. 454-460).

The idea that the jury was duty-bound to reach a verdict and was under an obligation to continue their deliberations until such a time a verdict could be agreed upon was further reinforced by the court's Allen charge which the court delivered to the jury on the second day of deliberation (T.T. 451-454).

In all of the charges given by the court to the jury, the court never once told the jurors that if they were honestly or hopelessly deadlocked that they would eventually be dismissed and allowed to go home. Instead, the message that the court conveyed to the jury was that they would not be discharged until a verdict was reached and no further deliberations was necessary. The reasonable doubt and Allen charges that was communicated by the court was coercive, and as a result, the petitioner was deprived of his right to a fair trial.

44

The petitioner's time bar should be excused in the instant case because the petitioner is actually innocent of the crime in which he stands convicted of and unlawfully imprisoned in violation of his constitutional rights, and to enforce the statute of limitations period under 28 U.S.C. § 2244(d)(1) under such circumstances would violate the Suspension Clause (U.S. Const. Art. 1 § 9, cl. 1, 2), and a fundamental miscarriage of justice would result if his claims were not considered on the merits.

The petitioner was also denied his right to a fair trial and due process of law, and was precluded from proving his innocence during the trial by (1) The withholding of crucial evidence by the prosecutor (See Grounds I & II); (2) The ineffective assistance of trial counsel (See Grounds III, IV, & V); (3) And by the introduction of highly prejudicial hearsay testimony known to be false by the prosecutor (See Ground VI).

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT

RECEIVED

1990 DEC 12  P 2: 2b

7077s
J/ep

_____ AD2d _____

TRUST ATTORNE Submitted - November 19, 1990
KINGS COUNTY, N.Y.

LAWRENCE J. BRACKEN, J.P.
SYBIL HART KOOPER
STANLEY HARWOOD
VINCENT R. BALLETTA, JR., JJ.

769E

The People, etc., respondent,
v Alvina Jennette, appellant.
(Ind. No. 6517/87)

DECISION & ORDER

Christina D'Amato-Arvoy, White Plains, N.Y., for appellant, and appellant *pro se*.

Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Jay M. Cohen, Victor Barall and Linda Cantoni of counsel), for respondent.

Appeal by defendant from a judgment of the Supreme Court, Kings County (Huttner J.), rendered August 18, 1988, convicting her of murder in the second degree, upon a jury verdict, and imposing sentence.

ORDERED that the judgment is affirmed (*see, People v Austin,* _____ AD2d _____ [decided herewith]).

BRACKEN, J.P., KOOPER, HARWOOD and BALLETTA, JJ., concur.

ENTER:

Martin H. Brownstein
Clerk

December 10, 1990

PEOPLE v JENNETTE, ALVINA

# State of New York
# Court of Appeals

BEFORE: HON. FRITZ W. ALEXANDER, II, Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK

Respondent,

against

ALVINA JENNETTE,

Appellant.

CERTIFICATE
DENYING
LEAVE

I, FRITZ W. ALEXANDER, II, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that, upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission to appeal is hereby denied.

Dated at New York , New York

July 31 , 19 91

_____
Associate Judge

*Description of Order: Order of the Appellate Division, Second Department, entered December 10, 1990, affirming a judgment of the Supreme Court, Kings County, rendered August 18, 1988.

**MEMORANDUM**

FORM III

SUPREME COURT     KINGS     COUNTY          (CRIMINAL TERM, PART MISC.)

THE PEOPLE OF THE STATE OF NEW YORK          By     HUTTNER    J.
                              Respondent,
                                              Dated     June 5,          19 92
ALVENA JENNETTE,        vs.                         INDICTMENT #6517/87

                              Defendant.           DECISION ON MOTION

 

Defendant moves pursuant to CPLR §440.10 to vacate his judgment of conviction on grounds that the People failed to provide Rosario and Brady material, and that he was denied effective assistance of counsel.

Defendant claims that the People failed to turn over documents relating to a polygraph examination of a prosecution witness which he alleges constitute Rosario material. Defendant had notice of the polygraph at the time of trial via reports that were disclosed, and therefore he is deemed to have waived any claim with respect to the polygraph. Besides, polygraph evidence is not admissible. See, Pereira v. Pereira, 35 NY 2d 301. Moreover, defendant has not demonstrated how the failure to disclose the polygraph would have materially affected the verdict. People v. Jackson, 78 NY 2d 638, 649.

Defendant further claims that the People failed to turn over the audio statement of a witness who did not testify, which he alleges is Brady material. The allegedly exculpatory statement of Rebecca Isaac was, in fact, just the opposite in that it inculpated defendant and the co-defendant. Since the statement would absolutely not have created "a reasonable doubt

FORM #1

# MEMORANDUM

| | | |
|---|---|---|
| SUPREME COURT | KINGS COUNTY | (CRIMINAL TERM, PART MISC.) |

THE PEOPLE OF THE STATE OF NEW YORK
                Respondent,

**vs.**

ALVENA JENNETTE,

              Defendant.

**By**      HUTTNER  J.

**Dated**   August 5, 19 92

INDICTMENT #6517/87

DECISION ON MOTION

Defendant's motion to reargue is granted and upon reargument the court adheres to its prior determination denying defendant's motion pursuant to CPLR 440.10 for vacatur of his judgment of conviction.

This constitutes the decision and order of this court.

ENTER.

J.S.C.

ENTERED

AUG 5 1992

WILBUR A. LEVIN
CLERK

ENTERED

MAR 30 1999

WILBUR A. LEVIN
COUNTY CLERK

STATE OF NEW YORK } ss
COUNTY OF KINGS }

I, WILBUR A. LEVIN, Clerk of the County of Kings and Clerk of the Supreme Court in and for said County [and Court being a Court of Record] DO HEREBY certify that I have compared the annexed with the original _____ August 5, 1992 _____ in the office of the Clerk _____ copy thereof and _____

In testimony _____ I have hereunder set my hand and affixed the seal of said County and Court, this _____ day of March 19 _____ 19

ENTERED

MAR 30 1999

**SUPREME COURT OF THE STATE OF NEW YORK**
**APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT**

5937b
B/em

ALBERT M. ROSENBLATT, J.

92-08833

The People, etc., plaintiff,                                    DECISION & ORDER ON MOTION
v Alvena Jennette, defendant.
(Ind. No. 6517/87)

Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate
granting leave to appeal to this court from an order of the Supreme Court, Kings County, dated June
5, 1992, which has been referred to me for determination.

Upon the papers filed in support of the application and the papers filed in opposition
thereto, it is

ORDERED that the application is denied.

ALBERT M. ROSENBLATT
Associate Justice

January 27, 1993

PEOPLE v JENNETTE, ALVENA

SUPREME COURT OF THE STATE OF NEW YORK

APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT

6523b
Z/nl

LAWRENCE J. BRACKEN, J.P.
THOMAS R. SULLIVAN
VINCENT R. BALLETTA, JR.
VINCENT PIZZUTO, JJ.

92-08382

DECISION & ORDER ON MOTION

The People, etc., respondent,
v Alvena Jennette, appellant.
(Ind. No. 6517/87)

Motion by the appellant for reargument of an appeal from a judgment of the Supreme Court, Kings County, rendered August 18, 1988, which was determined by decision and order of this court dated December 10, 1990.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

ORDERED that the motion is denied.

BRACKEN, J.P., SULLIVAN, BALLETTA and PIZZUTO, JJ., concur.

ENTER:

Martin H. Brownstein
Clerk

February 17, 1993

PEOPLE v JENNETTE, ALVENA

# State of New York
# Court of Appeals

BEFORE: HON. GEORGE BUNDY SMITH, Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK

Respondent,

against

ALVENA JENNETTE,

Appellant.

CERTIFICATE
DISMISSING
APPLICATION
Ind. No. 6517/87

I, GEORGE BUNDY SMITH, Associate Judge of the Court of Appeals of the State of New York, certify that the application by the defendant-appellant for a certificate to appeal pursuant to pursuant to §460.20 of the Criminal Procedure Law is dismissed because the order* sought to be appealed is not appealable under Criminal Procedure Law, §450.90(1).

Dated at Albany    , New York
    March 31    , 1993

_____
Associate Judge

*Description of Order:    Order of the Appellate Division, Second Department, dated February 17, 1993, denying defendant's motion for reargument of an appeal from a judgment of the Supreme Court, Kings County, rendered August 18, 1988.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT

D0547
C/cf

_____AD2d_____

A. GAIL PRUDENTI, P.J.
FRED T. SANTUCCI
MYRIAM J. ALTMAN
ANITA R. FLORIO, JJ.

_____

1992-08382                                          DECISION & ORDER

The People, etc., respondent,
v Alvina Jennette, appellant.

(Ind. No. 6517/87)

_____

Alvina Jennette, Sonyea, N.Y., appellant pro se.

Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Leonard Joblove and Anthea H. Bruffee of counsel), for respondent.

Application by the appellant for a writ of error coram nobis to vacate, on the ground of ineffective assistance of appellate counsel, a decision and order of this court dated December 10, 1990 (*People v Jennette*, 168 AD2d 513), affirming a judgment of the Supreme Court, Kings County, rendered August 18, 1988.

ORDERED that the application is denied.

The appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see Jones v Barnes*, 463 US 745).

PRUDENTI, P.J., SANTUCCI, ALTMAN and FLORIO, JJ., concur.

ENTER:

James Edward Pelzer
Clerk

October 14, 2003

PEOPLE v JENNETTE, ALVINA

# State of New York
# Court of Appeals

BEFORE:  HON. JUDITH S. KAYE

_____ Chief Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

ALVINA JENNETTE,

Appellant.

**CERTIFICATE
DENYING
LEAVE**

_____

I, JUDITH S. KAYE, Chief Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission is hereby denied.

Dated: January 8, 2004
       Albany, New York

_____
Chief Judge

**\* Description of Order:**   Order of the Appellate Division, Second Department, entered October 14, 2003, denying defendant's application for a writ of error coram nobis.